John F. Wright & another *vs.* Curtis Newton & another.

Worcester.    Oct. 7, 1880. — April 5, 1881.    Colt, Morton & Field, JJ.,
absent.

The owners of three lots of land, A, B and C, constructed, in 1844, an aqueduct from a spring on lot C to the respective buildings on each lot, but did not define their rights to the use of the water. In 1869, the buildings on lot C were removed, and, in 1871, the use of the water on that lot was discontinued. In 1877, all the lots were owned by the same person, and he conveyed lot A and the house thereon, which for about nine years had been occupied by the plaintiff and others as tenants, to the plaintiff by a deed, which gave him the right to take water from the spring "by the aqueduct as now laid from said house to said spring, to the extent and as has been the custom of the occupants of the house hereby conveyed, grantee not to use more than one fourth of the water conveyed in said aqueduct for the use of the occupants of said house." *Held*, that the "custom" referred to was that of the tenants, and not that of the original builders of the aqueduct; that the grantee had the right to the use of the water, not exceeding one fourth of the whole capacity of the aqueduct, in the same quantity and with the same force as such tenants had used it; and could maintain a bill in equity against his grantor, who continued to own lot B, and a person to whom lot C had been conveyed, after the deed to the plaintiff, with a right to use the water, to restrain them from interfering with such use. *Held, also*, that the plaintiff was not estopped to assert his rights by the fact that he had sold to the grantee of lot C lead pipe, with the knowledge that he intended to use it to connect his house with the aqueduct.

Bill in equity, filed January 17, 1879, against Curtis Newton and William Damon, to restrain the defendants from diverting water from an aqueduct. The case was heard by *Ames*, J., on the pleadings, the report of a master and exceptions thereto, and reserved for the consideration of the full court. The facts appear in the opinion.

*C. R. Train*, for the defendants.

*F. P. Goulding*, for the plaintiffs.

Endicott, J. It appears from the papers that this aqueduct was originally constructed in 1844, for the purpose of supplying water from a spring through lead pipes to three estates; namely, the estate now occupied by the plaintiffs, and the estates occupied by the defendants, Curtis Newton and William Damon, respectively. Curtis Newton became the owner of the estate now occupied by him soon after 1853. In 1866, Curtis Newton and his brother, Dexter Newton, purchased the estates now occupied by Damon and the plaintiffs, subject to the dower of

Sophia Fay; and in the same year she released to them all her right, title and interest in said estates, and in consideration thereof they conveyed to her a life estate in the house and barn now standing on the plaintiffs' estate, and also in a certain wood-lot which has no connection with this controversy. Sophia Fay continued to occupy the house and barn until her death in April 1877. In 1869, the Newtons took down the barn and slaughter-house standing on the estate now owned by Damon, which had previously been supplied by water from the aqueduct. In 1870, Dexter Newton conveyed to Curtis Newton all his interest in the estates now occupied by Damon and the plaintiff. In 1871, Curtis Newton removed the trough which stood in the barnyard of the Damon estate, and which was adjacent to the highway and was used more or less by the public, and closed up the pipe. From that time to the time when the plaintiffs took their deed of him, the Damon lot was an open field, and there was no use of the aqueduct upon it.

Prior to 1868, the supply of water to the plaintiffs' estate was confined to the lower story, and in that year the pipe was extended to the upper story for the purpose of supplying a tenant of Mrs. Fay. This use continued until her death. The master finds that the pipe was thus extended with the knowledge and assent of Dexter Newton. From 1873 until the death of Sophia Fay she used the water coming to the lower story, and the plaintiffs used the water in the upper story, which they then occupied as her tenants, and which they continued to occupy till they received their deed from Curtis Newton.

It appears from this recital that, in April 1877, Curtis Newton had acquired the whole title to the three estates, and to the easements belonging thereto, including the use of this aqueduct; he therefore had the right to make changes in the supply and use of the water on either estate, and to grant and convey such privilege in the use of the water upon either, as he saw fit.

In May 1877, Curtis Newton conveyed to the plaintiffs the estate now occupied by them, with the buildings thereon, together with the right to take water from the spring " by the aqueduct as now laid from said house to said spring, to the extent and as has been the custom of the occupants of the house hereby conveyed; grantees, their heirs and assigns, to pay one

quarter of the necessary expenses of keeping the spring in order, and of repairing or relaying the pipes between said house and spring; grantor reserves the right for the aqueduct to remain as now laid in said premises, and also the right to enter said premises, at all times, to repair or relay said pipe, doing no unnecessary damage thereby. Grantor's rights as herein reserved concerning pipe are to extend to his heirs and assigns; grantees, their heirs and assigns, not to use more than one fourth of the water conveyed in said aqueduct for the use of the occupants of said house."

The grantor thus defines the extent of the supply of water, and limits it to the same use "as has been the custom of the occupants;" but in no case is the use to exceed one fourth of the water conveyed by the aqueduct from the spring. He also imposes upon the grantees the duty of paying one fourth of the expense of keeping the spring in order and repairing and relaying the pipe from the spring to the house, and reserves to himself the right to enter the granted premises and repair or relay the pipe. He thus, as the owner of the whole aqueduct and of all the estates to be supplied by it, exercised his right of making new stipulations, and of determining the extent and limit of the use as to this particular estate. For it nowhere appears that the extent of the use of the water on this estate was defined, or what duties were imposed and rights given to each owner in regard to the aqueduct, as between the original owners. At the time of the conveyance, the pipe delivered water on both stories, and had been so used by the occupants of the house for about nine years. It must be presumed that this was the custom named in the deed.

A deed is to be construed most strongly against the grantor, and most favorably to the grantee, and it is to be inferred that the custom, as to the well-known use of the water by the occupants of the house, existing at the time of the conveyance, and for many years before, is the custom referred to, rather than a use which existed before 1868, of which it does not appear that the grantees had any knowledge. The word "occupants" in this connection, instead of "owners," evidently was intended to refer to those who were or had been in occupation of the premises as tenants, and was not intended to refer to any ancient

use customary with the original owners. We are therefore of opinion, that the grantees are entitled to the flow of the water in both stories to the same extent as it had been enjoyed by them and Sophia Fay and her other tenants during her lifetime; and that the words "to the same extent" mean that the water shall flow in the same quantity, and with the same force, but the grantees cannot use more than one fourth of the water of the spring.

While Curtis Newton had the right to convey interests in this aqueduct to other parties, he had no right by such conveyance to interfere with, prevent or diminish the full enjoyment of the easement granted by him to the plaintiffs. And if Damon's use of the water, according to the terms of his deed from Newton, has deprived the plaintiffs of their easement in the aqueduct as granted to them by Newton, there has been a breach of the covenant implied in the deed to the plaintiffs, that the grantor will do no act to interfere with or diminish the right granted. *Amidon* v. *Harris*, 113 Mass. 59.

The deed to Damon, made in the following June, gives to him the right to draw water from the aqueduct, and points out the manner in which it is to be drawn, and the extent of the use. The master has found that the opening of the aqueduct by Damon, and the drawing of water therefrom by him to the extent permitted by his deed, or to the more limited extent to which he has been accustomed to exercise his privilege, materially diminishes the plaintiffs' supply of water, and prevents them from receiving it "to the extent and as has been the custom of the occupants of the house;" and that this deprivation is a constant and continuing injury to the plaintiffs. Damon took his deed subject to the grant to the plaintiffs. The defendant Newton authorized Damon thus to take the water, and still retains an interest in the aqueduct. The case is not to be distinguished from *Amidon* v. *Harris*, and the plaintiffs are entitled to relief in equity.

The construction which we give to the plaintiffs' deed renders it unnecessary to consider whether, upon the evidence reported, the use of the water in the second story was permissive merely, and therefore not a customary use, as contended by the defendants. The extent to which the plaintiffs can use the water is

to be determined by the habitual use on the part of the occupants before and at the time of the grant, which must be presumed to have been known by the grantor when he gave the deed.

Nor can we find that the plaintiffs are estopped in equity from disputing the right of Damon, because in the usual course of business they sold to him seven hundred pounds of lead pipe, to be used upon his premises in taking water from the aqueduct; although the plaintiffs well knew at the time that Damon had bought the lot of Newton, and that under his deed he had purchased a right in the aqueduct, and was then using the water. While the plaintiffs must be presumed to know that Newton could properly convey rights in the aqueduct, and that Damon could use lead pipe for that purpose, they could not be expected to know that the water would be drawn by Damon to their injury, or what the effect would be upon their own supply. It cannot be said that by the sale they acquiesced in the violation by Damon or Newton of the implied covenants contained in their own deed.

The defendants, in their exceptions to the master's report, take no exception, and raise no question, in regard to that portion of the report wherein the master finds that the plaintiffs made certain changes in the direction of the pipe entering their house, and in the pipe within the house, which did not affect in any way the flow of the water. We have not, therefore, considered the argument of the defendants touching that point.

*Decree for the plaintiffs.*